**FILED**

JUN 1 8 2014

Clerk, U.S. District Court
District Of Montana
Missoula

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | CV 08–64–M–DWM |
| Plaintiff, | |
| vs. | FINDINGS OF FACT AND CONCLUSIONS OF LAW |
| JASON W. ELLSWORTH and YOUR MAGAZINE PROVIDER, INC., | |
| Defendants. | |

Following the Contempt Hearing held in the above-captioned matter on June 18, 2014, the Court issues the following Findings of Fact and Conclusions of Law:

1.  In proceedings before this Court in 2008, the Federal Trade Commission ("the FTC" or "the Commission") sought a preliminary injunction against Defendant Ellsworth. (Doc. 1.) The Commission alleged that Defendants, Jason Ellsworth, *et al.*, violated the FTC Act, 15 U.S.C. § 45(a), and the Telemarketing Sales Rule, 16 C.F.R. Part 310, by failing to disclose material facts about magazine subscription payment and cancellation policies, charging consumers for subscriptions without their express

informed consent, and failing to make proper disclosures about prize promotions. (*Id.*) The Court granted a Temporary Restraining Order. (Doc. 3.) The parties stipulated to a Preliminary Injunction. (Doc. 55.) After the Court granted Ellsworth's Motion to Dissolve the Preliminary Injunction, (Doc. 82), the parties settled the matter, (Doc. 91).

2.      A Stipulated Final Judgment and Order for Permanent Injunction ("the Order") was handed down by this Court on October 7, 2009. (Doc. 91.)

3.      The Court retained jurisdiction to enforce the Order. (*Id.* at 27.)

4.      The Order permanently restrained and enjoined Defendants from engaging in specified illegal and deceptive marketing and business practices in violation of the FTC Act, 15 U.S.C. § 45(a) and the Telemarketing Sales Rule, 16 C.F.R. Part 310. (*Id.* at 8-11.)

5.      The Order entered judgment against Defendants in the amount of $600,000. (*Id.* at 11-16.)

6.      The Order contained provisions requiring Defendants to allow the Federal Trade Commission ("the Commission" or "the FTC") to monitor their activities in the future to ensure compliance with the terms of the Order and Permanent Injunction. (*Id.* at 17-24.)

7.  The Order required Defendants to "submit additional written reports that are true and accurate and sworn to under penalty of perjury; produce documents or recordings for inspection and copying; appear for deposition; and provide entry during normal business hours to any business location in such Defendant's possession or direct or indirect control to inspect the business operation[,]" within ten (10) days of receipt of notice from the Commission. (*Id.* at 17-18.)

8.  The Order authorized the FTC to obtain discovery using the procedures prescribed by the Federal Rules of Civil Procedure. (*Id.* at 18.)

9.  The Order authorized FTC employees to pose as customers or suppliers to investigate Defendants' business practices. (*Id.*)

10. The order authorized the FTC to interview Defendants' employees who consent to such an interview, with counsel present if desired. (*Id.*)

11. The Order recognized the FTC's ability to lawfully seek, through compulsory process authorized by the FTC Act, 15 U.S.C. §§ 49, 57b-1, "any documentary material, tangible things, testimony, or information relevant to unfair or deceptive acts or practices in or affecting commerce (within the meaning of 15 U.S.C. § 45(a)(1))." (*Id.* at 18-19.)

12.　The Order required Defendants to provide the FTC with reports regarding formation of new companies or changes in the structure of their existing entities. (*Id.* at 20-21.)

13.　The Order required Defendants to provide to the FTC an annual report documenting, *inter alia*, employment, duties, business activities, and compliance with the Order. (*Id.* at 21-23.)

14.　The Order stipulates that Defendants must retain accounting records, detailed personnel records, detailed customer files, complaints and refund requests, sales scripts, training materials, and other information. (*Id.* at 23-24.)

15.　Jason Ellsworth is the President, Director, and Registered Agent of Your Magazine Provider, doing business as U.S. Magazine Service, a Defendant in this action. (Docs. 92-42 & 92-43.) Your Magazine Provider has used the address 737 Highway 93 North, Hamilton, Montana for its operations. (Doc. 92-44.) Ellsworth owns two tracts of land at that address. (Doc. 91 at 28.)

16.　Ellsworth is the Owner of Countrywide Periodicals, LLC, which has used 737 Highway 93 North, Hamilton, Montana as its address. (Docs. 92-45 & 92-46.)

17.　Ellsworth is the bank signatory for Romp, Inc., doing business as Old West Periodicals and Readers Service, which also uses the address 737 Highway 93 North, Hamilton, Montana. (Docs. 92-47, 92-48, & 92-49.) Romp Inc.'s registered agent is Ellsworth's counsel, Mr. Hank Waters. (Doc. 92-50.)

18.　Ellsworth is the President and registered agent for Lavell Enterprises, Inc., doing business as Periodicals. (Docs. 92-51 & 92-52.) Lavell uses 737 Highway 93 North in Hamilton, Montana as its address. (Doc. 92-51.) Ellsworth partnered with Louis Lavergne to form Lavell Enterprises, Inc., (Doc. 92-53 at 7), which sold magazine subscription packages, (Doc. 92-54 at 1).

19.　Ellsworth is the President and Director of Customer Service, Inc., doing business as Magazine Billing. (Docs. 92-55 & 92-56.) Customer Service, Inc.'s registered address is 1073 Golf Course Road, Hamilton, Montana. (Doc. 92-55.) Customer Service, Inc. has also used 737 Highway 93 North, Hamilton, Montana as its address. (Docs. 92-56 & 92-57 at 2-3.) Mr. Waters is its registered agent. (Doc. 92-55.)

20.　Time 2 Read, Inc. maintains bank accounts using the address 737 Highway 93 North, Hamilton, Montana. (Doc. 92-58.) Lavergne is Time 2 Read, Inc.'s bank signatory. (Doc. 92-58.) Bryce Eggleston is Time 2 Read,

Inc.'s Director. (Doc. 92-59.) Eggleston was General Manager of Sales for U.S. Magazine Service. (Doc. 92-60 at 2.)

21. There is a financial connection between Time 2 Read, Inc. and Customer Service, Inc., as evidenced by seven checks signed by Ellsworth totaling $115,000 drawn between March 8, 2013 and April 8, 2013. (Doc. 92-61.)

22. From the date of the Court's Stipulated Final Judgment and Order for Permanent Injunction, the Better Business Bureau ("the BBB") has fielded 1098 consumer complaints regarding entities associated with Ellsworth, including Your Magazine Provider, Countrywide Periodicals, and Old West Periodicals. (Doc. 92-62; *see, e.g*, Docs. 92-3 to 92-40.)

23. In May 2013, the FTC issued a Civil Investigative Demand to Countrywide Periodicals seeking information to investigation whether Countrywide was violating the law. (Doc. 92-64.)

24. Countrywide petitioned to quash the Civil Investigative Demand. (Doc. 92-65.)

25. The Commission denied Countrywide's Petition to Quash. (Doc. 92-66.)

26. Invoking the terms of the Stipulated Final Judgment and Order for Permanent Injunction, the Commission contacted Ellsworth and other entities associated with Ellsworth after it was unsatisfied with

Countrywide's response to the Civil Investigative Demand. (*See* Docs. 92-67 to 92-72.)

27. The FTC's discovery requests sought information authorized by the Stipulated Final Judgment and Order for Permanent Injunction. (*Compare* Doc. 92-67 at 5-7 *with* Doc. 91 at 8-11, 17-18.)

28. The FTC's discovery requests were relevant to its investigation of Ellsworth's ongoing compliance with the FTC Act, the Telemarketing Sales Rule, and the Order, (*compare* Doc. 92-67 at 5-7 *with* Doc. 91 at 8-11), and therefore sought information authorized by the Order, (*see* Doc. 91 at 17-18.)

29. Request for Production No. 1 directed Ellsworth to "[p]rovide all contracts and agreements, regardless of date, between any Telemarketing Entity and any Magazine Clearinghouse." (Doc. 92-67 at 5.) The Commission claims that Ellsworth's production of one contract for U.S. Magazine Service is an incomplete response to this request because they received contracts for other related companies from a magazine clearinghouse. (Doc. 92-1 at 23.) Ellsworth claims he has produced all responsive documents in his control to this request. (Doc. 101-1 at 3.)

30. Request for Production No. 1 seeks information necessary for the FTC to monitor and investigate Ellsworth's Compliance with the FTC Act, the Telemarketing Sales Rule, and the Order. Contracts and agreements between Ellsworth and telemarketers and magazine clearinghouses are necessary to appreciate the scope and context of his business and relationships with other commercial entities. The request is therefore within the ambit of the Order and Ellsworth must comply.

31. Request for Production No. 2 directed Ellsworth to:

> Provide all documents, regardless of date, relating to any relationship or agreement between any Telemarketing Entity and: (a) any other entity engaged in Magazine Sales; and (b) any other entity that provides a product or service (other than magazine subscriptions) that any Telemarketing Entity markets or sells to consumers.

(Doc. 92-67 at 5.) The Commission cites no deficiency in Ellsworth's production of one agreement in response to this request. (Doc. 92-1 at 23.) Ellsworth claims he has produced all responsive documents in his control to this request. (Doc. 101-1 at 3.)

32. Request for Production No. 3 directed Ellsworth to "[f]or each magazine title for which any Telemarketing Entity engages in Magazine Sales, provide documents sufficient to show all payment arrangements, including

remit rates and any other fees paid to any Magazine Clearinghouse." (Doc. 92-67 at 5.) The Commission claims Ellsworth failed to respond to this request and argues that failure stands contrary to the Order's directive that Ellsworth maintain "[a]ccounting records that reflect the cost of goods or services sold." (Doc. 92-1 at 23.) Ellsworth claims he has produced all responsive documents in his control to this request. (Doc. 101-1 at 3.)

33. Request for Production No. 3 seeks information necessary for the FTC to monitor and investigate Ellsworth's Compliance with the FTC Act, the Telemarketing Sales Rule, and the Order. The Order required Ellsworth to maintain the detailed accounting records sought to protect the Commission's ability to monitor his business activities and ensure compliance with consumer protection laws. These records are properly subject to discovery under the Order. Ellsworth must comply fully with the request.

34. Request for Production No. 4 directed Ellsworth to:

> Provide: (a) all agent and sub-agent applications and authorizations, regardless of date and regardless of whether the application was approved, between any Telemarketing Entity and any Magazine Clearinghouse or entity that engages in Magazine Sales; and (b) documents sufficient to show that any Telemarketing Entity is authorized to offer the subscription pricing and terms for the magazine titles any Telemarketing Entity offers to customers.

(Doc. 92-67 at 5.) The Commission claims that Ellsworth's production of one "approval form" is an incomplete response to this request. (Doc. 92-1 at 23.) Ellsworth claims he has produced all responsive documents in his control to this request. (Doc. 101-1 at 3.)

35. Request for Production No. 4 seeks information necessary for the FTC to monitor and investigate Ellsworth's Compliance with the FTC Act, the Telemarketing Sales Rule, and the Order. Complete information about the magazine titles and related subscription and pricing terms is necessary to effectuate these consumer protection laws. The request is within the scope of the Order. Ellsworth must comply with the request in-full.

36. Request for Production No. 5 directed Ellsworth to:

> For all databases any Telemarketing Entity maintains containing any information or data relating to customers, provide: (a) the full and complete database in native format with all available fields and data, including but not limited to all fields relating to customer names and contact information, the magazine titles to which the customer subscribed, all customer inquiries and complaints, and all payments made by customers; and (b) any key or list explaining all fields and codes that appear in the database.

> NOTE: Produce all databases in an easily readable and fully usable manner, including a database schema and any other software or interface required to read or access data. Provide the full and complete database regardless of whether any information is also provided in response to any other Request.

(Doc. 92-67 at 5-6.) The Commission states that Ellsworth has not responded to this request. (Doc. 92-1 at 24.) Ellsworth states that he has not complied with this request due to concerns about the privacy of customer information. (Doc. 101-1 at 5.)

37. Request for Production No. 5 seeks information necessary for the FTC to monitor and investigate Ellsworth's Compliance with the FTC Act, the Telemarketing Sales Rule, and the Order. The databases sought is needed to determine whether Ellsworth and his companies fulfilled magazine orders as represented to consumers. Ellsworth agreed to maintain this information by entering his stipulation to the Order. It is therefore not unduly burdensome to request production of this data. The Commission's request is within the scope of the Order. Ellsworth must comply with Request for Production No. 5.

38. Request for Production No. 6 directed Ellsworth to "[p]rovide documents sufficient to show: (a) all requests any Telemarketing Entity submitted to any Magazine Clearinghouse to switch a customer's subscription from one magazine title to a new magazine title; and (b) all responses to such requests." (Doc. 92-67 at 6.) The Commission states that Ellsworth has not responded to this request. (Doc. 92-1 at 24.) Ellsworth states that he has

not complied with this request due to concerns about the privacy of customer information. (Doc. 101-1 at 5-6.)

39.   Request for Production No. 6 seeks information necessary for the FTC to monitor and investigate Ellsworth's Compliance with the FTC Act, the Telemarketing Sales Rule, and the Order. Information about customer requests to switch publications is needed to determine whether Ellsworth and his companies followed through on statements made to consumers when marketing the magazine subscriptions at issue in this action. The Commission's request is within the scope of the Order. Ellsworth must comply with Request for Production No. 6.

40.   Request for Production No. 7 directed Ellsworth to:

> Provide all scripts, rebuttal scripts, outlines, guides, or related documents, used by any Telemarketing Entity on or after October 7, 2009, relating to any communication with customers or prospective customers, including but not limited to outbound sales calls, follow up calls, closing calls, "verification" calls, customer inquiries, complaints, cancellation requests, and refund requests.

(Doc. 92-67 at 6.) The Commission cites no deficiency in Ellsworth's production of 12 pages of scripts in response to this request. (Doc. 92-1 at 24.) Ellsworth claims he has produced all responsive documents in his control to this request. (Doc. 101-1 at 4.)

41. Request for Production No. 8 directed Ellsworth to "[p]rovide all Training Materials for all employees of any Telemarketing Entity used in any way on or after October 7, 2009." (Doc. 92-67 at 6.) The Commission cites no deficiency in Ellsworth's production of an employee handbook in response to this request. (Doc. 92-1 at 24.) Ellsworth claims he has produced all responsive documents in his control to this request. (Doc. 101-1 at 4.)

42. Request for Production No. 9 directed Ellsworth to:

> Provide: (a) documents sufficient to demonstrate any marketing relationship or affiliation between any Telemarketing Entity and any credit card company, bank, or financial institution that relates to any representation any Telemarketing Entity made to consumers; and (b) documents sufficient to substantiate any claim that any Telemarketing Entity contacts consumers because of the consumer's relationship or preferred status with a credit card company, bank, or financial institution.

(Doc. 92-67 at 6.) The Commission states that Ellsworth has not responded to this request. (Doc. 92-1 at 24.) Ellsworth claims he has produced all responsive documents in his control to this request. (Doc. 101-1 at 4.)

43. Request for Production No. 9 seeks information necessary for the FTC to monitor and investigate Ellsworth's Compliance with the FTC Act, the Telemarketing Sales Rule, and the Order. The information sought is necessary to investigate marketing offers made by Ellsworth to consumers.

The Commission's request is within the scope of the Order. Ellsworth must comply with Request for Production No. 9.

44. Request for Production No. 10 directed Ellsworth to "[p]rovide documents sufficient to establish the source of all lists of prospective customers and any lead lists. (Doc. 92-67 at 6.) The Commission cites no deficiency in Ellsworth's production of a list of lead providers in response to this request. (Doc. 92-1 at 24.) Ellsworth claims he has produced all responsive documents in his control to this request. (Doc. 101-1 at 4.)

45. Request for Production No. 11 directed Ellsworth to "[p]rovide all audio recordings of: (a) all customers or prospective customers recorded on each day within the date ranges listed in Appendix A (90 days total); and (b) all customers or prospective customers listed in Appendix B." (Doc. 92-67 at 6.) The Commission states that Ellsworth has not complied with this request. (Doc. 92-1 at 25.) The Commission states that Ellsworth's production of audio recordings he himself selected is not responsive to the terms of this request. (*Id.*) Ellsworth states that he has not complied with the request in full due to concerns about the privacy of customer information. (Doc. 101-1 at 6.)

46.    Request for Production No. 11 seeks information necessary for the FTC to

monitor and investigate Ellsworth's Compliance with the FTC Act, the

Telemarketing Sales Rule, and the Order. The select group of audio

recordings sought are essential to determine the nature of promises, offers,

and statements made by Ellsworth and his companies to consumers the FTC

is charged with protecting. The Commission's request is within the scope

of the Order. Ellsworth must comply with Request for Production No. 5.

47.    Request for Production No. 12 directed Ellsworth to:

> Provide all complaints and inquiries received by any Telemarketing
> Entity, including but not limited to those received from consumers
> directly or indirectly through any other entity, and provide any
> communications from or on behalf of any Telemarketing Entity in
> response to such complaints and inquiries.

(Doc. 92-67 at 6.) The Commission claims Ellsworth's production of

various spreadsheets detailing about 100 complaints, occasionally without

the consumer's initial complaint, is an incomplete response to this request.

(Doc. 92-1 at 25.) Ellsworth states that he intends to comply with the

request and would do so prior to June 18, 2014. (Doc. 101-1 at 6.)

48.    Request for Production No. 12 seeks information necessary for the FTC to

monitor and investigate Ellsworth's Compliance with the FTC Act, the

Telemarketing Sales Rule, and the Order. The complaint information

sought is needed to monitor Ellsworth's handling of consumer complaints and identify discrepancies between his records and those produced by other entities to the FTC. The Commission's request is within the scope of the Order. If he has not already done so, Ellsworth must comply with Request for Production No. 12.

49.  Request for Production No. 13 directed Ellsworth to:

> For each employee, agent, and consultant of any Telemarketing Entity provide each person's: (a) full name, address, phone number, and email address; (b) starting and ending dates of employment; (c) position, role, and responsibilities; (d) terms and amount of compensation; and (e) reason for termination, if terminated.

(Doc. 92-67 at 6.) The Commission argues that Ellsworth's production of a list of employee names and addresses is an incomplete response to this request. (Doc. 92-1 at 25.) Ellsworth states that he has not complied with the request due to concerns about employees' privacy rights. (Doc. 101-1 at 7.)

50.  Request for Production No. 13 seeks information necessary for the FTC to monitor and investigate Ellsworth's Compliance with the FTC Act, the Telemarketing Sales Rule, and the Order. Information about Ellsworth's employees and former employees is needed to gather information about the representations made on sales calls and the general business practices of

-16-

Ellsworth's companies. Ellsworth agreed to maintain this information by entering his stipulation to the Order. It is therefore not unduly burdensome to request production of this information. The Commission's request is within the scope of the Order. Ellsworth must comply with Request for Production No. 13.

51. Request for Production No. 14 directed Ellsworth to "[p]rovide documents sufficient to show all merchant account numbers, payment processors, and contacts at each payment processor for any merchant account used by any Telemarketing Entity." (Doc. 92-67 at 6.) The Commission states that Ellsworth has not responded to this request. (Doc. 92-1 at 26.) Ellsworth claims he has not complied because this request is outside the Commission's authority, is an attempt to conduct pre-litigation discovery, and is punitive in nature. (Doc. 101-1 at 7.)

52. Request for Production No. 14 seeks information necessary for the FTC to monitor and investigate Ellsworth's Compliance with the FTC Act, the Telemarketing Sales Rule, and the Order. Merchant account information is needed to analyze billing practices of Ellsworth's companies, specifically, how the companies handled refund requests and disputed charges. The information will also assist in the Commission's evaluation of Ellsworth's

billing practices in relation to the representations made to consumers in sales calls. The Commission's request is within the scope of the Order. Ellsworth must comply with Request for Production No. 14.

53. Request for Production No. 15 directed Ellsworth to "[p]rovide documents sufficient to establish the document retention policies employed by any Telemarketing Entity during the Applicable Time Period." (Doc. 92-67 at 6.) The Commission cites no deficiency in Ellsworth's production of a document reciting text from the Order in response to this request. (Doc. 92-1 at 26.) Ellsworth claims he has produced all responsive documents in his control to this request. (Doc. 101-1 at 4.)

54. Request for Production No. 16 directed Ellsworth to:

> To the extent not produced in a fully accurate and accessible format in response to Request for Production No. 5, for each customer of any Telemarketing Entity from January 1, 2011 through the date of full and complete compliance with this request, provide the following in a sortable spreadsheet (in MS Excel, MS Access, or other readily accessible format):
>
> (a) Customer First Name; (b) Customer Last Name; (c) Street Address; (d) Phone Number; (e) Sales Date (date of telemarketing sales call); (f) Total Amount Paid (total amount paid by customer); (g) Monthly Payment Amount (monthly amount paid by customer); (h) Payment Dates (date of first and last payment by customer); (I) Orders Requested (magazine titles and subscription length requested by customer); (j) Submission Date (date each magazine title was submitted to a Magazine Clearinghouse or publisher for fulfillment);

(k) Orders Submitted (magazine titles and subscription length submitted to a Magazine Clearinghouse or publisher on a customer's behalf); (l) Confirmation Date (date fulfillment of requested title and length was confirmed); (m) Remit Amount (amount any Telemarketing Entity remitted to secure the fulfillment); and (n) Remit Date (date any Telemarketing Entity paid remit amount).

(Doc. 92-67 at 6-7.) The Commission argues that Ellsworth's production of a spreadsheet containing information about 30,713 consumers is an incomplete response to this request because certain details requested were not furnished. (Doc. 92-1 at 26.) Ellsworth states that he has not complied with the request due to concerns about the privacy of customer information. (Doc. 101-1 at 7.)

55. As was the case with Request for Production No. 5, Request for Production No. 16 seeks information necessary for the FTC to monitor and investigate Ellsworth's Compliance with the FTC Act, the Telemarketing Sales Rule, and the Order. Customer and order data is crucial to the FTC's work to ascertain compliance with consumer protection laws. Ellsworth agreed to maintain this information by entering his stipulation to the Order. It is therefore not unduly burdensome to request production of this information. Furthermore, Request No. 16 is limited by Request No. 5 and is therefore not duplicative. The Commission's request is within the scope of the Order.

Ellsworth must comply with Request for Production No. 16.

56. Request for Production No. 17 directed Ellsworth to "[i]dentify all officers, directors, managers, and owners for any Telemarketing Entity, and, for each individual entity, state the corresponding dates and ownership share." (Doc. 92-67 at 7.) The Commission states Ellsworth's response to this request is incomplete because he provided no information about the managers or officers of the entities that received the discovery requests. (Doc. 92-1 at 27.) Ellsworth claims he has produced all responsive documents in his control to this request. (Doc. 101-1 at 5.)

57. Request for Production No. 17 seeks information necessary for the FTC to monitor and investigate Ellsworth's Compliance with the FTC Act, the Telemarketing Sales Rule, and the Order. Information about officers, directors, managers, and owners of entities subject to discovery requests in this matter is needed to gather information about the structure and general business practices of Ellsworth's companies. The Commission's request is within the scope of the Order. Ellsworth must comply with Request for Production No. 17.

58. In addition to requesting these materials directly from Ellsworth, the FTC served their requests for production in substantially similar form on entities

connected to Ellsworth, including Countrywide Periodicals, LLC, (*see* Doc. 92-64), Your Magazine Provider, Inc., (*see* Doc. 92-67), Customer Service, Inc., (*see* Doc. 92-68), Romp, Inc., (*see* Doc. 92-69), JBS Enterprises, LLC, (*see* Doc. 92-70), Lavell Enterprises, Inc., (*see* Doc. 92-71), and Time 2 Read, Inc., (*see* Doc. 92-72). Ellsworth contends he has produced all responsive documents in his possession or control or in the possession or control of Countrywide, Your Magazine Provider, Lavell, Customer Service, and JBS Enterprises. (Doc. 101-1 at 2.) He has not produced or mentioned any responsive documents held by Time 2 Read, an entity to which Ellsworth exhibits close financial and business ties.

59. "A district court has the power to adjudge in civil contempt any person who willfully disobeys a specific and definite order of the court. A person fails to act as ordered by a court when he fails to take all the reasonable steps within his power to insure compliance with the court's order. A court has wide latitude in determining whether there has been contemptuous defiance of its order." *Gifford v. Heckler*, 741 F.2d 263, 265-66 (9th Cir. 1984) (citations and quotations omitted).

60. "Criminal contempt is established when there is a clear and definite order of the court, the contemnor knows of the order, and the contemnor willfully

disobeys the order." *United States v. Powers*, 629 F.2d 619, 627 (9th Cir. 1980) (citations omitted).

61. "In a civil contempt action the proof of the defendants' contempt must be clear and convincing, a higher standard than the preponderance of the evidence standard in most civil cases, but less than the beyond the reasonable doubt standard of criminal contempt proceedings." *Id.* at 626 n.6.

62. Punishment for civil contempt aims to achieve compliance with a court order, and must be lifted once the contemnor purges the contempt by complying with the order of the court. *Id.* at 627.

63. Punishment for criminal contempt is designed to vindicate the authority of the court and thus does not terminate on compliance with the court's order. *Id.*

64. "Actions and proceedings need not be wholly civil or wholly criminal and the choice of one label does not prevent application of both forms of contempt punishment. For this reason no distinct line can be drawn between civil and criminal contempt. Each shares the other's attributes. The same conduct may result in both civil and criminal contempt charges." *Id.* (citing *United States v. United Mine Workers of America*, 330 U.S. 258

-22-

(1946)).

65.    To invoke substantial compliance with a court order as a viable defense to a civil contempt action a party must "show that he took every reasonable effort to comply with the order." *Fed. Trade Comm. v. EDebitPay, LLC*, 695 F.3d 938, 945 (9th Cir. 2012) (*citing In re: Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993)).

66.    Ellsworth's representation that he has "substantially complied" with the FTC's discovery requests, (Doc. 101 at 4), is not square with the facts presented by the parties. Ellsworth openly admits making a calculated decision to avoid production of certain documents. (Doc. 101-1 at 8.) This admission is inconsistent with taking every reasonable effort to comply with the document requests, and therefore defeats Ellsworth's defense of substantial compliance.

67.    Ellsworth's generic privacy objections to complying with the Commission's discovery requests are without merit. Disclosure of consumer and employee information to the government to facilitate investigation and monitoring of an organization's commercial activities does no harm to an individual's right to privacy. *See United States Dept. of Justice v. Reptrs. Comm. for Freedom of the Press*, 489 U.S. 749 (1989) ("The right to collect and use

[personal] data for public purposes is typically accompanied by a concomitant . . . duty to avoid unwarranted disclosures.") Furthermore, in effectuating its investigation of certain consumer protection laws, the Commission is bound to protect the privacy and confidentiality of information collected. *See, e.g.*, 15 U.S.C. § 57b-2(b) (governing confidentiality of information received by the FTC pursuant to a Civil Investigative Demand). Consumer and employee data may be disclosed to the Commission without doing harm to an individual privacy right.

68. As discussed above, Ellsworth's specific objections to the FTC's discovery requests are without merit.

69. The FTC is entitled to the discovery authorized by the Order.

70. The Court finds clear and convincing evidence of Ellsworth's failure to fully comply with Requests for Production 1, 3, 4, 5, 6, 9, 11, 12, 13, 14, 16, and 17, and failure to disclose any relevant information regarding Time 2 Read, Inc.

71. Ellsworth's conduct is directly opposed to a specific and definite Order of this Court. (*See* Doc. 91.)

72. As evidenced by his declaration that his non-compliance with the Requests for Production was a calculated decision, based on his belief that the

requests exceed the scope of the FTC's authority, (*See* Doc. 101-1 at 8), the Court finds Ellsworth's conduct in violation of the Order willful.

73.   Ellsworth has failed to take all the reasonable steps within his power to guarantee compliance with the Court's Order. For this willful defiance of the Court's Order, Ellsworth is hereby adjudged in civil contempt of this Court.

IT IS ORDERED that the Federal Trade Commission's Motion to find Defendant Jason W. Ellsworth in Contempt of Court, (Doc. 92), is GRANTED.

IT IS FURTHER ORDERED that Defendant Jason W. Ellsworth is JUDGED IN CIVIL CONTEMPT of this Court. Within ten (10) days of the date of this Order, Ellsworth must purge himself of contempt by complying with all requests for production submitted by the Federal Trade Commission, (*see* Doc. 92-67), and requests for production related to Time 2 Read, Inc. Ellsworth's contempt may be purged upon filing of a joint stipulation entered between the Commission and Ellsworth attesting to his compliance with the requests for production.

IT IS FURTHER ORDERED that a bench warrant for Ellsworth's apprehension will issue if he fails to purge himself of the contempt within the time period specified, and Ellsworth will be committed to the custody of the Attorney

General, or his duly authorized representative, for incarceration until such time as Ellsworth shall purge himself of contempt. If he fails to purge himself of the contempt within the time period specified, Ellsworth will also be assessed a civil fine of $100.00 per day he remains in contempt of this Court. If Ellsworth shall decide to comply with the requests for production after his incarceration, he must advise the Attorney General or his representative, who must promptly communicate such information to the court. The Court will then make such orders as are necessary to enable Ellsworth to comply.

DATED this __16__ day of June, 2014.

_____
Donald W. Molloy, District Judge
United States District Court